741 So.2d 1226 (1999)
BAYFRONT MEDICAL CENTER, INC., Appellant,
v.
STATE of Florida, AGENCY FOR HEALTHCARE ADMINISTRATION, Appellee.
No. 98-02756.
District Court of Appeal of Florida, Second District.
October 1, 1999.
Tracy S. Carlin, Daniel N. Burton and Christopher E. Butler of Foley & Lardner, Tampa, for Appellant.
Mark S. Thomas, Tallahassee, for Appellee.
Michael J. Glazer and John R. Beranek of Ausley & McMullen, Tallahassee, and William A. Bell and John M. Knight, Tallahassee, for Florida Medical Association and Florida Hospital Association, Amicus Curiae.
Elliot H. Scherker, William B. Eck and Paul C. Savage of Greenberg Traurig, P.A., Miami, for Baptist Health Systems of South Florida, Inc., Amicus Curiae.
Lynn A. Shapiro and Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, for Association for Responsible Medicine, Amicus Curiae.
CAMPBELL, Acting Chief Judge.
Appellant, Bayfront Medical Center, Inc., challenges the summary judgment that enforced an administrative subpoena duces tecum issued by appellee, Agency for Healthcare Administration (AHCA). Appellee's subpoena required Appellant to produce certain of its "peer review" records for inspection by Appellee as part of its responsibilities of "risk management" review. Appellant is a hospital licensed under chapter 395, Florida Statutes (1997), and therefore, a "health care provider" as defined in section 766.101(1)(b), Florida Statutes (1997). Finding, as we will explain, that the documents sought by Appellee's subpoena and approved by the trial court's summary judgment are protected from discovery by sections 395.0193(7) and 766.101(5), Florida Statutes (1997), we reverse in part.
Several interrelated statutes apply. The statutes of particular applicability are contained in chapter 395, Hospital Licensing and Regulations, and in chapter 766, Medical Malpractice and Related Matters. Section *1227 395.0193(2) provides in pertinent part as follows:
Each licensed facility, as a condition of licensure, shall provide for peer review of physicians who deliver health care services at the facility. Each licensed facility shall develop written, binding procedures by which such peer review shall be conducted. Such procedures shall include:
* * *
(e) Recording of agendas and minutes which do not contain confidential material, for review by the Division of Health Quality Assurance of the agency. (Emphasis supplied).
Section 395.0193(3) provides in part as follows:
If reasonable belief exists that conduct by a staff member or physician who delivers health care services at the licensed facility may constitute one or more grounds for discipline as provided in this subsection, a peer review panel shall investigate and determine whether grounds for discipline exist with respect to such staff member or physician. The governing board of any licensed facility, after considering the recommendations of its peer review panel, shall suspend, deny, revoke, or curtail the privileges, or reprimand, counsel, or require education, of any such staff member or physician after a final determination has been made that one or more of the following grounds exist:
* * *
Section 395.0193(4) provides:
All final disciplinary actions taken under subsection (3) shall be reported within 10 working days to the Division of Health Quality Assurance of the agency in writing and shall specify the disciplinary action taken and the specific grounds therefor. The division shall review each report and determine whether it potentially involved conduct by the licensee that is subject to disciplinary action, in which case s. 455.225 shall apply. The report shall not be subject to inspection under s. 119.07(1) even if the division's investigation results in a finding of probable cause.
Section 395.0193(7) provides:
The investigations, proceedings, and records of the peer review panel, a committee, a disciplinary board, or a governing board, or agent thereof with whom there is a specific written contract for that purpose, as described in this section shall not be subject to discovery or introduction into evidence in any civil or administrative action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such group or its agent, and a person who was in attendance at a meeting of such group or its agent may not be permitted or required to testify in any such civil or administrative action as to any evidence or other matters produced or presented during the proceedings of such group or its agent or as to any findings, recommendations, evaluations, opinions, or other actions of such group or its agent or any members thereof. However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil or administrative action merely because they were presented during proceedings of such group, and any person who testifies before such group or who is a member of such group may not be prevented from testifying as to matters within his or her knowledge, but such witness may not be asked about his or her testimony before such a group or opinions formed by him or her as a result of such group hearings.
Section 766.101(1)(a)1.a and b. provide:
(1) As used in this section:
(a) The term `medical review committee' or `committee' means:

*1228 1.a. A committee of a hospital or ambulatory surgical center licensed under chapter 395 or a health maintenance organization certificated under part I of chapter 641.
b. A committee of a state or local professional society of health care providers.
Section 766.101(2) provides:
(2) A medical review committee of a hospital or ambulatory surgical center or health maintenance organization shall screen, evaluate, and review the professional and medical competence of applicants to, and members of, medical staff. As a condition of licensure, each health care provider shall cooperate with a review of professional competence performed by a medical review committee.
Section 766.101(5) provides:
(5) The investigations, proceedings, and records of a committee as described in the preceding subsections shall not be subject to discovery or introduction into evidence in any civil or administrative action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions, or other actions of such committee or any members thereof. However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his or her knowledge, but the said witness cannot be asked about his or her testimony before such a committee or opinions formed by him or her as a result of said committee hearings.
In addition to and separate from the requirements for "peer review" of physicians required by section 395.0193 and section 766.101(2), each licensed facility is required by section 395.0197 to establish, as a part of its administrative functions, an internal "risk management program" that is "intended to reduce the frequency and severity of medical malpractice and patient injury claims." The "peer review" process of section 395.0193 and section 766.101 is directed toward physicians and the "peer review" focus is the "review of professional practices at the facility to reduce morbidity and mortality and to improve patient care." § 395.0193(2)(g), Fla. Stat. (1997).
This physician-oriented "peer review" process is to be contrasted with the internal risk management program required by section 395.0197, which is primarily directed at "nonphysician personnel," and its focus is "risk management" and not professional competency. Subsection 395.0197(5) requires licensed facilities to make annual reports to the agency summarizing incident reports that have been filed with the licensed facility. These summarized annual reports are required to include a "report of all disciplinary actions pertaining to patient caretakers against any medical staff member, including the nature and cause of the action." (Emphasis supplied). The disciplinary "peer review" investigation and the procedures and interpretations resulting therefrom are not a part of the "risk management program" required by section 395.0197. "Peer review" is a separate and distinct procedure required instead by section 395.0193.
Appellee argues that section 395.0197(11) operates to override the privilege established by section 395.0193(7) so as to give Appellee the right of access to the record of the deliberations and opinions contained within the investigations conducted by peer review committees. *1229 We disagree. Section 395.0197(11) specifically provides as follows:
(11) The agency shall have access to all licensed facility records necessary to carry out the provisions of this section. The records obtained are not available to the public under s. 119.07(1), nor shall they be discoverable or admissible in any civil or administrative action, except in disciplinary proceedings by the agency or the appropriate regulatory board, nor shall records obtained pursuant to s. 455.223 be available to the public as part of the record of investigation for and prosecution in disciplinary proceedings made available to the public by the agency or the appropriate regulatory board. However, the agency or the appropriate regulatory board shall make available, upon written request by a health care professional against whom probable cause has been found, any such records which form the basis of the determination of probable cause, except that, with respect to medical review committee records, s. 766.101 controls. (Emphasis supplied).
The access provided by section 395.0197(11) is limited to that pertaining to the "risk management" program. "Peer review" is a separate process under which the peer review panel investigates and determines whether grounds for discipline exist with respect to a staff member or physician. The peer review panel makes recommendations to the hospital governing board which then considers the recommendations and decides upon its action. We conclude that the records of the investigative portion of the peer review panel are privileged from disclosure by sections 395.0193(7) and 766.101(5). The courts of this state have consistently construed the privilege and confidentiality of "peer review" records in the broadest manner to protect the integrity of the "peer review" process. We are not persuaded to do otherwise. See Holly v. Auld, 450 So.2d 217 (Fla.1984); Cruger v. Love, 599 So.2d 111 (Fla.1992); All Children's Hosp., Inc. v. Davis, 590 So.2d 546 (Fla. 2d DCA 1991); Paracelsus Santa Rosa Medical Center v. Smith, 732 So.2d 49, 24 Fla. L. Weekly D1240 (Fla. 5th DCA 1999); Munroe Regional Medical Center, Inc. v. Rountree, 721 So.2d 1220 (Fla. 5th DCA 1998); Variety Children's Hosp. v. Mishler, 670 So.2d 184 (Fla. 3d DCA 1996); Century Medical Centers, Inc. v. Marin, 686 So.2d 606 (Fla. 3d DCA 1996), review denied, 695 So.2d 698 (Fla.1997); Palm Beach Gardens Comm. Hosp., Inc. v. O'Brien, 651 So.2d 783 (Fla. 4th DCA 1995); Mount Sinai Medical Center v. Bernstein, 645 So.2d 530 (Fla. 3d DCA 1994); Bay Medical Center v. Sapp, 535 So.2d 308 (Fla. 1st DCA 1988).
However, the report of the results of such "peer review" investigations, as contrasted to the actual records of the investigative procedures of the "peer review" panel, is not clothed with the same privilege. Appellee's subpoena sought the following from Appellant:
The minutes of the department of surgery meeting in which the care of [Ms. Jane Doe] on March 25, 1997, was discussed along with any recommendations and corrective action which resulted from such discussions.
We reverse the summary judgment entered below insofar as it approved the subpoena requiring production of the minutes of the meeting of the department of surgery. That portion of the subpoena directed toward the recommendations and corrective action taken are not privileged from discovery by Appellee.
Reversed in part and affirmed in part.
WHATLEY and STRINGER, JJ., Concur.